UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

EARL D. OSBORNE, JR.,

      Plaintiff

v.                                    Civil Action No. 2:02-1250

THE HONORABLE CHARLES E. KING, JR.,
THE HONORABLE PAUL ZAKAIB, JR.,
THE HONORABLE TOD J. KAUFMAN,
THE HONORABLE JAMES C. STUCKY,
THE HONORABLE HERMAN C. CANADY, JR.,
THE HONORABLE IRENE C. BERGER,
THE HONORABLE LOUIS H. BLOOM,
Judges, Thirteenth Judicial Circuit,
Kanawha County, West Virginia,

      Defendants

MEMORANDUM OPINION AND ORDER

      Pending is plaintiff Earl D. Osborne's ("Osborne")
motion for summary judgment filed July 20, 2007.

I.

      Plaintiff Earl D. Osborne was appointed to the position
of Home Incarceration Supervisor of the Kanawha County Home
Incarceration Program on February 21, 1997.  (Compl. at ¶ 1.)
Osborne was employed by the County Commission of Kanawha County,
with the approval of the judges, and supervised by former Sheriff
Dave Tucker.  (Id. at ¶ 2.)  This somewhat unusual employment and

oversight authority is mandated by West Virginia Code section 62-11B-7a:

> The county commission may employ one or more persons with the approval of the circuit court and who shall be subject to the supervision of the sheriff as a home incarceration supervisor or may designate the county sheriff to supervise offenders ordered to undergo home incarceration and to administer the county's home incarceration program.

W. Va. Code § 62-11B-7a.

On October 12, 2001, the judges entered an order purporting to divest plaintiff of his position. (Id. at ¶ 5.) The "Administrative Order" entered by the judges provides as follows:

> WHEREAS, numerous complaints have been received from persons within the judiciary, offenders, and other persons relating to the conduct of Earl Osborne as the home incarceration supervisor and the manner in which he administers the program, some of which are potentially subject to investigation; and
>
> WHEREAS, it was reported that the home incarceration supervisor, Earl Osborne, has, on at least one occasion, while speaking with an officer of the Court in regards to an offender undergoing home incarceration, uttered a racial slur while referring to such offender as "just a no-good nigger"; and
>
> WHEREAS, Sheriff Dave Tucker, as a supervisor of the home incarceration supervisor, Earl Osborne, was advised by the office of the Prosecuting Attorney of Kanawha County of said incident; and
>
> WHEREAS, neither Sheriff Dave Tucker or the office of the Prosecuting Attorney of Kanawha County reported that incident concerning the home incarceration

2

supervisor, Earl Osborne, to this Court nor did they officially communicate with the Court about any subsequent investigation of the home confinement program and or it's [sic] supervisor, Earl Osborne, notwithstanding this Court's obvious interest in the appropriate administration of said program; and

WHEREAS, the Court is of the opinion that the only investigation conducted by Sheriff Dave Tucker of Kanawha County relating to said incident <u>was an internal investigation conducted without objectivity and which was biased and unreliable</u>; and

WHEREAS, <u>the numerous complaints relating to the administration of the home incarceration program on the part of the Kanawha County Sheriff's Department and the home incarceration supervisor, Earl Osborne, have eroded the Court's confidence in such program to such a degree that it has, therefore, been effectively taken away from the Court as a means of alternative sentencing</u>;

Now, THEREFORE, based on the foregoing, it is ORDERED and ADJUDGED that Earl Osborne be relieved forthwith as the supervisor of the home incarceration program and that he be removed from the payroll of said program as approval of such employment is hereby denied.

(Order, attached as Ex. B. to Compl. (emphasis supplied)).  The order is signed by each of the judges.

On October 12, 2001, pursuant to the order, Sheriff Dave Tucker and the County Commission of Kanawha County removed Osborne from his position and terminated his employment.  (<u>Id.</u> at ¶ 6, 7).  The order received coverage in the local news media.

3

On November 9, 2001, Osborne informed the defendants that their actions were in violation of the Constitutions and the laws of the United States of America and West Virginia inasmuch as his termination was effected without notice and opportunity to be heard:

> Mr. Osborne has been denied all of his due process and equal protection rights under the Federal and State Constitutions, his rights under Federal and State administrative procedure laws, his governmental employment rights, and his rights to administrative due process and equal protection of the laws.

(Id. at ¶ 9; Letter attached as Ex. C to Compl.)  Osborne further demanded that defendants grant him his rights as follows:

> Mr. Osborne demands his rights as stated.  Accordingly, Mr. Osborne demands from the Circuit Court, from the Sheriff of Kanawha County, and the Kanawha County Commission a notice and full statement of the charges against him.  Mr. Osborne demands an opportunity to protest the charges brought against him.  Mr. Osborne demands a hearing on the charges, at which he will be afforded the opportunity to confront the charges and any witnesses against him.  Mr. Osborne demands an opportunity to refute the charges, which incidently he does.  Mr. Osborne demands the right to have the assistance of counsel.  Mr. Osborne demands the right to contest the charges, the termination of his employment, and any penalty imposed.

(Id.)  Osborne claims that defendants have refused to recognize any of these rights.  (Compl. at ¶ 10.)

On October 15, 2002, Osborne initiated this action.  He alleged he "had both a property and liberty interest in continued

4

employment . . . ." (Compl. ¶ 3.)   The complaint further alleges
Osborne's entitlement, <u>inter</u> <u>alia</u>, to "due process[,]" an
"opportunity . . . to protest . . . [and] . . . for . . . a
hearing . . . ."  (<u>Id.</u> ¶ 8).   Specifically, Osborne:

> seeks to refute and defend against any charges against
> him with the Affidavit of Ben Browning . . . the
> Affidavit of R.D. Evans . . . with the Affidavit of
> Earl D. Osborne . . . and with the Report of the
> internal investigation by the Office of the Sheriff of
> Kanawha County . . and with the testimony and evidence
> of those witnesses in open hearing, all of which
> exonerate the Plaintiff from the charges and
> allegations made against him.

(<u>Id.</u> ¶ 11).   The referenced affidavits attempt to refute the
allegations concerning the racial slur and are designed to defend
Osborne against the badge of racism.[1]  Osborne alleges that, as a
result of the events surrounding his termination, he was
"publically defamed" and that the affair has "caused irreparable
damage to his reputation as a person and law-enforcement officer
. . . ."  (<u>Id.</u> ¶ 14).

_____

[1]Each affidavit is sworn.  Browning contends he and Osborne
were parties to the conversation with the "officer of the Court"
identified in the Order.  Browning observes that he "did not at
anytime hear Mr. Osborne make any derogatory statements or
remarks of any biases."  (Ex. D, Compl.)  Both Browning and
another affiant, R.D. Evans, observe Osborne is evenhanded and
they have never heard him utter a racial slur.  In his own
affidavit, Osborne denies he uttered the racial slur and contends
he tries "to treat African Americans with respect in . . . [his]
personal as well as . . . professional capacity."  (Ex. F,
Compl.).

Osborne has moved for summary judgment on his property and liberty interest claims alleged under the Fourteenth Amendment Due Process Clause.

II.

A.   The Governing Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support

6

the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France

7

v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are

"drawn from the underlying facts    . . . must be viewed in the

light most favorable to the party opposing the motion."  United

States v. Diebold, Inc., 369 U.S. 654, 655 (1962).


B.    Governing Law and Analysis


1.   Property Interest Claim


Our court of appeals has observed, in accordance with

settled Supreme Court precedent, that "[i]n order to have a

protected property interest in his employment, a person must

possess a legitimate claim of entitlement to it -- created, for

example, by contract or state law."  Ridpath v. Board of

Governors Marshall University, 447 F.3d 292, 308 n.14 (4th Cir.

2006); see Jackson v. Long, 102 F.3d 722, 728 (4th Cir. 1996).


In Jackson, the court of appeals concluded that the

plaintiffs lacked a property interest in their continued

employment.  The court of appeals observed as follows respecting

that claim:

> Under North Carolina law, employment is generally
> presumed to be "at-will" in the absence of a contract
> establishing a definite employment duration or a
> statute or ordinance restricting an employee's

**8**

discharge. <u>See</u> <u>Pittman v. Wilson County, 839 F.2d 225,</u>
<u>227</u> (4th Cir. 1988). Rather than restricting the
discharge of sheriff's employees, including jailers,
North Carolina law explicitly grants sheriffs exclusive
power over employment decisions. <u>See</u> N.C. Gen. Stat. §§
153A-103 ("Each sheriff ... elected by the people has
the exclusive right to hire, discharge, and supervise
the employees in his office").

<u>Jackson</u>, 102 F.3d at 728.

The nature of the at-will employment relationship in
West Virginia is akin to the law of North Carolina as discussed
in <u>Jackson</u>.  Like North Carolina, employment in West Virginia is
generally presumed to be at will:

"This Court has traditionally recognized that an
employment which is of an indefinite duration is
rebuttably presumed to be a hiring at will, which is
terminable at any time at the pleasure of either the
employer or the employee."

[B]ecause of the at-will presumption, "any promises
alleged to alter the presumptive relationship must be
very definite to be enforceable."  The party asserting
that an employment was other than at-will bears the
burden of rebutting the at-will presumption.  The
burden a plaintiff undertakes in this regard is heavy .
. . .

<u>Younker v. Eastern Associated Coal Corp.</u>, 214 W. Va. 696,
699-700, 591 S.E.2d 254, 257-58 (2003) (citations omitted).

Also similar to <u>Jackson</u>, a review of the specific
statutes governing Osborne's employment reinforces the conclusion
that he served at the will and pleasure of his employer.  As

9

earlier noted, West Virginia Code section 62-22B-7a provides as
follows:

> The county commission may employ one or more persons
> with the approval of the circuit court and who shall be
> subject to the supervision of the sheriff as a home
> incarceration supervisor or may designate the county
> sheriff to supervise offenders ordered to undergo home
> incarceration and to administer the county's home
> incarceration program.

W. Va. Code § 62-11B-7a (emphasis supplied).  West Virginia Code

section 7-1-3m additionally permits county commissions "to

discharge at their will and pleasure, any . . . personnel"

similarly situated to Osborne.  See W. Va. Code § 7-1-3m

(emphasis supplied).

        Although not discussed by the parties, to the extent

any doubt remains concerning Osborne's status, our court of

appeals' decision in Jenkins v. Weatherholtz, 909 F.2d 105 (4th

Cir. 1990), reinforces the conclusion that he possessed no

property interest in his continued employment as Home

Incarceration Supervisor: "A local government employee serving

'at the will and pleasure' of the government employer has no

legitimate expectancy of continued employment and thus has no

protectible property interest."  Id. at 107.

        Defendants have not formally moved for summary judgment

concerning the property interest claim.  The court, accordingly,

holds the dismissal of the claim in abeyance pending motions to
be made at the close of Osborne's case.  It is at least clear at
this juncture, however, that Osborne is not entitled to judgment
as a matter of law on the claim.[2]  The court, accordingly, ORDERS
that Osborne's motion for summary judgment respecting his
property interest claim be, and it hereby is, denied.


2.   Liberty Interest Claim


          Osborne additionally moves for summary judgment
concerning his liberty interest claim.  The court's analysis is
aided substantially by our court of appeals' recent decision in
Ridpath v. Board of Governors Marshall University, 447 F.3d 292
(4th Cir. 2006).  Ridpath claimed, like Osborne here, that

_____

          [2]Osborne relies heavily upon Spriggs v. Diamond Auto Glass,
165 F.3d 1015 (4th Cir. 1999).  In Spriggs, plaintiff alleged his
claim pursuant to 42 U.S.C. § 1981 was dismissed in error because
his at-will employment relationship with Diamond was contractual
and thus protected by § 1981.  The question of whether a
relationship has sufficient contractual indicia for purposes of
section 1981, however, is entirely distinct from the unrelated
issue of whether an at-will employment relationship gives rise to
a protectible property interest for Fourteenth Amendment
purposes.  As noted, Jenkins rather conclusively forecloses
Osborne's contention that his at-will employment relationship
equates to a property interest in continued employment for due
process purposes.  Were the rule otherwise, every public employee
would enjoy a property interest in his or her continued
employment.  The law, as stated in Jenkins, is otherwise, and
Spriggs is inapposite.

certain state actors violated his Fourteenth Amendment right to
due process.  Specifically, he contended that by placing a
"corrective action" label on his employment reassignment form,
the defendants "knowingly foreclosed his career opportunities . .
. without allowing him an opportunity to defend himself."  Id. at
308.  The precise right allegedly violated in that case, as here,
was "the right to procedural due process when governmental action
threatens a person's liberty interest in his reputation and
choice of occupation."  Id. at 307.

     The elements for such a "stigma-plus" claim can be
gleaned from a variety of Supreme Court decisions from Board of
Regents v. Roth, 408 U.S. 564 (1972) to Siegert v. Gilley, 500
U.S. 226, 232-33 (1991).  One respected civil-rights commentator
lists the elements as follows:

    1.  stigma imposed by government;
    2.  in conjunction with;
    3.  deprivation of a tangible interest, the "plus";
    4.  publication of the stigmatizing charges;
    5.  alleged to be false;
    6.  denial of a name-clearing hearing.

1 Martin A. Schwartz, Section 1983 Litigation §3.05[C] (4th ed.
2006) (emphasis in original).[3]

_____

     [3]This formulation of the elements appears consistent with
our court of appeals' approach in Ridpath:

     [T]he allegations of Ridpath's Amended Complaint and
     the reasonable inferences drawn therefrom establish
     that the Administrators publicly made a false charge
     against Ridpath, connoting dishonesty and other serious
                                        (continued...)

Defendants contend summary judgment is inappropriate inasmuch as "genuine issues of material fact exist in this case regarding the truth or falsity of the incidents of the Plaintiff's job-related misconduct that preceded the issuance of the Administrative Order relieving the Plaintiff of his duties." (Defs.' Resp at 16).  Defendants' contention presumes that it is incumbent upon the plaintiff to prove, not merely allege, the falsity of the stigmatizing charges.  Indeed, defendants contend "to invoke due process protections, the plaintiff must demonstrate that the government's remarks constituted a false statement, because there can be no deprivation of the employee's liberty interests unless the charges at issue are false." (Id. at 7 (citing Ridpath, 447 F.3d at 312; Codd v. Velger, 429 U.S. 624 (1977); Stone v. University of Maryland Medical System Corp., 855 F.2d 167 n.5 (4th Cir. 1988)).  Defendants note in particular a quote from Ridpath stating "There can be no deprivation of

---

[3](...continued)
character defects on his part, in the course of subjecting him to a significant demotion to a position outside his field of choice. Moreover, it is undisputed that the Amended Complaint reflects that Ridpath was not provided notice or an opportunity to be heard with respect to this charge. Ridpath therefore has sufficiently alleged the violation of his Fourteenth Amendment right to due process when a liberty interest is at stake. And, thus, the allegations underlying his due process claim satisfy the first prong of the qualified immunity test.

Ridpath, 447 F.3d at 313.

liberty unless the stigmatizing charges at issue are false."
<u>Ridpath</u>, 447 F.3d at 312.[4]

Although plaintiff in reply omits any discussion of the
legal principles governing the determination, primary and
secondary authorities suggest that an aggrieved party need only
allege, not prove, the falsity of the stigmatizing charges.  <u>See</u>,
<u>e.g.</u>, <u>Brown v. City of Michigan City</u>, 462 F.3d 720, 730 (7th Cir.
2006) ("To be sure, the statements made about Mr. Brown at the
August 1st and August 29th Board meetings probably could be
classified, if untrue, as [constitutionally] defamatory because
they had and may continue to have the potential to 'injure his
... reputation' and are 'capable of being proved false.'");
<u>Patterson v. City of Utica</u>, 370 F.3d 322, 330 (2nd Cir. 2004) ("A
plaintiff generally is required only to raise the falsity of
these stigmatizing statements as an issue, not prove they are
false."); <u>Gwinn v. Awmiller</u>, 354 F.3d 1211, 1216 (10th Cir. 2004)
("Instead, a plaintiff asserting that the government has violated
the Due Process Clause by impugning his or her 'good name,
reputation, honor, or integrity,' must demonstrate that: (1) the
government made a statement about him or her that is sufficiently
derogatory to injure his or her reputation, that is capable of
being proved false, and that he or she asserts is false, and (2)
the plaintiff experienced some governmentally imposed burden that

--------

[4]This quote from <u>Ridpath</u> is dealt with at pages 18-19 <u>infra</u>.

'significantly altered [his or] her status as a matter of state law.'")(citations omitted); Sadallah v. City of Utica, 383 F.3d 34, 38 (2nd Cir. 2004) ("To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."); Brandt v. Board of Co-op. Educational Services, 820 F.2d 41, 43-44 (2nd Cir. 1987)("The Supreme Court has required only that a plaintiff raise the issue of falsity regarding the stigmatizing charges -- not prove it -- in order to establish a right to a name-clearing hearing.  Here, Brandt satisfied that requirement by alleging in his complaint that the charges were false. The truth or falsity of the charges would then be determined at the hearing itself. If Brandt had to prove the falsity of the charges before he could obtain a hearing, there would be no need for the hearing.") (citation omitted); Wojcik v. Massachusetts State Lottery Com'n, 300 F.3d 92, 103 (1st Cir. 2002)(stating one element of a liberty interest claim as requiring the employee to "dispute the charges made against him as false."); Speer v. City of Wynne, 276 F.3d at 984 (8th Cir. 2002)(noting "A public employee must make a three-part showing to establish the deprivation of a liberty interest in his good name . . . [including that he] . . . denied the charges that led to . . . [his] firing."); Quinn v. Shirey,

15

293 F.3d 315, 320 (6th Cir. 2002) (quoting <u>Brown v. City of</u>
<u>Niota</u>, 214 F.3d 718, 722-23 (6th Cir. 2000)) ("This Court has
identified five factors that a plaintiff must show in order to
establish that he was deprived of a liberty interest and entitled
to a name-clearing hearing. " . . . . Fourth, the plaintiff must
claim that the charges made against him were false. . . .");
<u>Ulrich v. City and County of San Francisco</u>, 308 F.3d 968, 982
(9th Cir. 2002) ("[A] plaintiff must show the public disclosure
of a stigmatizing statement by the government, the accuracy of
which is contested, plus the denial of 'some more tangible
interest[ ] such as employment,' . . . ."); <u>Coleman v. Reed</u>, 147
F.3d 751, 755 (8th Cir. 1998) (stating "an employee is not
required to prove that the stigmatizing charges are false in
order to be entitled to a name-clearing hearing.  However, this
court has always required a plaintiff to at least deny the
substantial truth of the charges.") (citations omitted); <u>Buxton</u>
<u>v. City of Plant City</u>, 871 F.2d 1037, 1042-43 (11th Cir.
1989)("The district court required that . . . [plaintiff] prove:
(1) a false statement . . . [meaning he was required to] present
a factual dispute which has significant bearing on his reputation
. . . ."); <u>Pollock v. Baxter Manor Nursing Home</u>, 716 F.2d 545,
547 (8th Cir. 1983) ("It is clear that the Court in <u>Carey</u>
determined that a plaintiff is still entitled to nominal damages
for a failure to hold a due process hearing even if it is shown
that the stigmatizing information is true. In the instant case,

16

the nursing home refused to conduct a due process hearing and thereby violated Pollock's right to procedural due process. We accordingly reverse the district court and order that Pollock be awarded nominal damages of one dollar and reasonable attorney fees."); 1 Martin A. Schwartz <u>supra</u> § 3.05[c][v] ("The plaintiff . . . need only 'raise the issue of falsity regarding the stigmatizing charges -- not prove it -- in order to establish a right to a name-clearing hearing.'") (quoting <u>Brandt</u>); Emilio Jaksetic, <u>Security Clearance Determination and Due Process</u>, 12 Geo. Mason U. L. Rev. 171, 193-94 (1990)("Whether the charges are objectively true or false is not the controlling factor for liberty interest purposes.  Rather, it is whether the person alleges the charges are substantially false or inaccurate.").

        While these decisions do not rely upon it, their analysis is supported by dictum in <u>Owen v. City of Independence</u>, 445 U.S. 622 (1980):

> Although respondents did not cross petition on this issue, they have raised a belated challenge to the Court of Appeals' ruling that petitioner was deprived of a protected "liberty" interest. . . . . In the present case, the city -- through the unanimous resolution of the City Council -- released to the public an <u>allegedly false</u> statement impugning petitioner's honesty and integrity. Petitioner was discharged the next day. The Council's accusations received extensive coverage in the press, and even if they did not in point of fact "cause" petitioner's discharge, the defamatory and stigmatizing charges certainly "occur[red] in the course of the termination of employment."  . . . Yet the city twice refused petitioner's request that he be given written

> specification of the charges against him and an
> opportunity to clear his name. Under the circumstances,
> we have no doubt that the Court of Appeals correctly
> concluded that <u>the city's actions deprived petitioner</u>
> <u>of liberty without due process of law</u>.

<u>Id.</u> at 633 n.13 (emphasis supplied).

The Fourth Circuit Court of Appeals' decisions in
<u>Ridpath</u> and <u>Stone</u> relied upon by defendants are not to the
contrary.  <u>Ridpath</u> involved an appeal from an order denying Rule
12(b)(6) qualified immunity motions.  Defendants contended, <u>inter</u>
<u>alia</u>, that plaintiff's allegations were insufficient to establish
falsity.  While the court of appeals observed "[t]here can be no
deprivation of liberty unless the stigmatizing charges at issue
are false[,]" the statement must be viewed in context.  As noted,
<u>Ridpath</u> involved a plaintiff's challenge to a "'corrective
action'" label attached to his reassignment to another position
in an educational institution.  The defendants contended that
Ridpath failed to "allege[] that his reassignment was not a
'corrective action,'"   <u>Ridpath</u>, 447 F.3d at 312.  In other
words, defendants contended plaintiff had not alleged falsity.
In response, the court of appeals noted as follows:

> This contention is belied by the Amended Complaint.
> Ridpath <u>repeatedly disputes</u> therein the central
> implication of the "corrective action" label, i.e.,
> that he was responsible for the University's NCAA rules
> violations. Indeed, the essence of Ridpath's due
> process claim is that he should have been provided
> notice and a hearing <u>to prove</u> his lack of culpability
> and clear his name.  This is a matter in which the
> falsity of a stigmatizing charge <u>is fervently contested</u>

18

-- not, for instance, one in which the plaintiff had
previously conceded the truth of stigmatizing charges,
in effect acting as his own accuser and rendering a
hearing useless.  We therefore reject the
Administrators' final liberty interest contention.

Id. at 312-13 (emphasis supplied).

One searches Ridpath in vain for the proposition that a
plaintiff must prove falsity in order to demonstrate entitlement
to a name clearing hearing.[5]  Instead, to demonstrate liability,
plaintiff need only show, in addition to the remaining elements
of his liberty interest claim, that the allegations against him
are capable of being proven false and that he claims they are
false.

The rationale behind this rule is apparent when one
considers the primary remedy available to a plaintiff in this
setting once liability is proven -- a name-clearing hearing.  The
requirement of merely alleging falsity in order to prove
liability for failure to provide a name-clearing hearing allows
the aggrieved public employee to present evidence at such a
hearing to counter the defamatory charges against him.  Stated

_____

[5]The same is true of Stone, which likewise does not assist
defendants.  In stating the necessary elements of a liberty
interest claim, the court of appeals observed plaintiff's
obligation "to allege facts tending to show that his superiors
made charges against him . . . that . . . were false."  Stone,
855 F.2d at 173 n.5 (citations omitted) (emphasis supplied).
Indeed, this formulation appears to cut against defendants'
argument that falsity must be proven.

19

more succinctly, the employee being afforded an opportunity to prove his side of the story is the purpose of the remedy, not a prerequisite to receiving the remedy.  The inquiry is necessarily skewed if one demands that a plaintiff conclusively prove falsity in order to be entitled to a name-clearing hearing.  Indeed, once falsity is proven, there would be no need for the hearing.

It thus appears that plaintiff need not prove that the allegations against him were false in order to obtain a name-clearing hearing.  Instead, he need only show that the allegations against him are capable of being proven false and that he claims they are false.

Regarding the applicable elements, in the same publicized order that stigmatized Osborne with an attributed racist remark, he was "relieved forthwith as the supervisor of the home incarceration program and . . . removed from the payroll of said program  . . . ."  (Ord.).  Additionally, Osborne not only alleges the allegation against him is untrue, but he offers supporting, sworn affidavits to that effect.  It is equally undisputed that while he sought a name-clearing hearing less than one month following entry of the Order, he was denied the opportunity to present his version of events.  Inasmuch as these salient events do not appear contested within the summary

20

judgment briefing, Osborne is entitled to judgment as a matter of
law as to liability respecting his liberty interest claim.  The
court, accordingly, ORDERS that plaintiff's motion for summary
judgment respecting his liberty interest claim be, and it hereby
is, granted.

The question of remedy now arises.  A finding in favor
of plaintiff on liability alone is doubtless a sufficient basis
upon which to award nominal damages, although that question may
be left to the fact finder.[6]  Carey v. Piphus, 435 U.S. 247, 266
(1978) (stating "we believe that the denial of procedural due

_____

[6]A finding of nominal damages alone, however, may
substantially impact any requested award of attorney fees
pursuant to 42 U.S.C. § 1988 in view of binding precedent:

The only success enjoyed by Johnson and Vickers against
Clark was on the federal vehicle search claim, which
resulted in an award of only 35 cents to each. Under
Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121
L.Ed.2d 494 (1992), this "success" was not sufficient
to justify a § 1988 award. In Farrar, the Supreme Court
addressed the reasonableness of an award of attorneys'
fees pursuant to § 1988(b) when the plaintiff sought
$17 million in compensatory damages but received only
one dollar in nominal damages.  The Court held that
"[w]hen a plaintiff recovers only nominal damages
because of his failure to prove an essential element of
his claim for monetary relief, the only reasonable fee
is usually no fee at all."  Farrar, 506 U.S. at 115,
113 S.Ct. 566 (citation omitted).  This is because when
the recovery of monetary damages is the purpose of the
claim, a plaintiff who receives only nominal damages
has succeeded in only a technical sense.

Johnson v. City of Aiken, 278 F.3d 333, 338 (4th Cir. 2002).

process should be actionable for nominal damages without proof of
actual injury."); Patterson, 370 F.3d at 330.   Another available
remedy, as noted, is provision of the name-clearing hearing
initially denied to the employee by his governmental employer.
Patterson, 370 F.3d at 330 ("If a plaintiff successfully proves
his stigma-plus claim, due process requires that as a remedy he
be given a post-deprivation opportunity to clear his name.");
Gibson v. Caruthersville School Dist. No. 8, 336 F.3d 768, 773
(8th Cir. 2003).

        An additional remedy is an award of compensatory
damages.   The question of falsity re-enters the calculus,
however, in determining whether a plaintiff is entitled to such
an award.   An affirmative defense is available to the
governmental employer to partially block an aggrieved party's
entitlement to compensatory damages resulting from a liberty
interest deprivation.   See Brewer, 938 F.2d at 864 ("Finally, we
hold that the public employer carries the burden of proving that
the plaintiff would have been fired even if procedural due
process had been observed."); Alexander v. Polk, 750 F.2d 250,
263 (3rd Cir. 1984).   Plaintiff's proof in opposition to the
affirmative defense then becomes, in essence, his name-clearing
opportunity.

        As noted by the Supreme Court in Carey, a case in which
students were suspended from certain public schools without

procedural due process, the outcome of the name-clearing inquiry

will impact whether compensatory damages are appropriate:

> In this case, the Court of Appeals held that if
> petitioners can prove on remand that "[respondents]
> would have been suspended even if a proper hearing had
> been held," then respondents will not be entitled to
> recover damages to compensate them for injuries caused
> by the suspensions.  The court thought that in such a
> case, the failure to accord procedural due process
> could not properly be viewed as the cause of the
> suspensions.  The court suggested that in such
> circumstances, an award of damages for injuries caused
> by the suspensions would constitute a windfall, rather
> than compensation, to respondents. We do not understand
> the parties to disagree with this conclusion. Nor do
> we.
>
> . . . .
>
> Moreover, where a deprivation is justified but
> procedures are deficient, whatever distress a person
> feels may be attributable to the justified deprivation
> rather than to deficiencies in procedure. But as the
> Court of Appeals held, the injury caused by a justified
> deprivation, including distress, is not properly
> compensable under § 1983. This ambiguity in causation,
> which is absent in the case of defamation per se,
> provides additional need for requiring the plaintiff to
> convince the trier of fact that he actually suffered
> distress because of the denial of procedural due
> process itself.

Carey, 435 U.S. at 260, 263 (citations and footnotes omitted)

Our court of appeals' has taken heed of Carey as well.

In Burt v. Abel, 585 F.2d 613 (4th Cir. 1978), plaintiff was

found to have been discharged for cause but she was not provided

adequate pre-termination notice and a hearing.  The damages

analysis provides pertinently as follows:

In order for a plaintiff who has suffered a deprivation
of procedural due process to recover more than nominal
damages, he must also prove that the procedural
deprivation caused some independent compensable harm. .
. .

Carey, we believe, requires that we . . . remand
the case to allow plaintiff to plead and prove any
Actual [sic] injury suffered by Mrs. Burt as a result
of defendant's alleged failure to provide adequate
pretermination notice and hearing.  Because it is
settled that Mrs. Burt's discharge was for just cause,
plaintiff shall not be allowed to allege lost pay or
lost retirement-fund contributions as damages
attributable to the procedural deprivation. However, as
the Supreme Court itself observed in Carey, this does
not preclude plaintiff from alleging an intangible
injury such as "mental and emotional distress caused by
the denial of procedural due process."

If on remand plaintiff is unable to allege any
actual injury stemming from the procedural defects in
Mrs. Burt's 1970 discharge, the district court shall
nonetheless enter an award in plaintiff's favor of
nominal damages not to exceed one dollar. If, however,
plaintiff is able in good faith to allege actual
damages as described above, the district court shall
upon demand of either party impanel a jury for the
purpose of determining (1) if Mrs. Burt's discharge
violated the procedural norms of the fourteenth
amendment, and (2) the amount of actual damages
attributable thereto.

Id. at 616.


Based upon Carey and Burt, assuming a defendant can

prove his affirmative defense, namely, that the allegations

against the employee were true or substantiated to the point that

termination would have occurred even had a name-clearing hearing

been provided, the aggrieved party is entitled at most to nominal

24

damages or, alternatively, such compensatory damages as he may be able to prove for denial of a name-clearing hearing.  If the governmental employer fails to prove its affirmative defense though, a full range of damages are available to a plaintiff, again upon proper proof.

III.

Based upon the foregoing discussion, the court ORDERS that Osborne's motion for summary judgment be, and it hereby is, granted in part and denied in part as set forth above.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  October 31, 2007

John T. Copenhaver, Jr.
United States District Judge