UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION


EARL D. OSBORNE, JR.,

          Plaintiff

v.                                   Civil Action No. 2:02-1250

THE HONORABLE CHARLES E. KING, JR.,
THE HONORABLE PAUL ZAKAIB, JR.,
THE HONORABLE TOD J. KAUFMAN,
THE HONORABLE JAMES C. STUCKY,
THE HONORABLE HERMAN C. CANADY, JR.,
THE HONORABLE IRENE C. BERGER,
THE HONORABLE LOUIS H. BLOOM,
Judges, Thirteenth Judicial Circuit,
Kanawha County, West Virginia,

          Defendants

                    MEMORANDUM OPINION AND ORDER


          Pending is defendants' (the "defendants" or "judges")
motion for summary judgment, filed November 5, 2007.


                              I.


          On February 21, 1997, plaintiff Earl D. Osborne was
appointed to the position of Home Incarceration Supervisor of the
Kanawha County Home Incarceration Program.  (Compl. at ¶ 1.)
Osborne was employed by the County Commission of Kanawha County,
with the approval of the judges, and supervised by former Sheriff
Dave Tucker.  (Id. at ¶ 2.)  This somewhat unusual employment and

oversight authority is mandated by West Virginia Code section 62-11B-7a:

> The county commission may employ one or more persons with the approval of the circuit court and who shall be subject to the supervision of the sheriff as a home incarceration supervisor or may designate the county sheriff to supervise offenders ordered to undergo home incarceration and to administer the county's home incarceration program.

W. Va. Code § 62-11B-7a.

On August 29, 2001, Assistant Prosecuting Attorney Eric Hudnall prepared a memorandum to Prosecuting Attorney Michael T. Clifford.  The memorandum stated pertinently as follows respecting a conversation between Hudnall and Osborne about a supervised defendant, Malcolm S. Taylor:

> Upon returning to my office, I received a phone call from . . . [Osborne] about the hearing that had ended just a few minutes prior, which . . . [Osborne] attended.  In commenting on the issue of . . . [Taylor's] work, . . . [Osborne] communicated to me that "the problem with . . . [Taylor] is that he is just a no good nigger."

(Ex. Defs.' Mot. Summ. J.)  Osborne was then serving as the Kanawha County Home Confinement Supervisor.

On October 12, 2001, the judges entered an order purporting to divest Osborne of his position.  (Compl. at ¶ 5.) The "Administrative Order" entered by the judges provides as follows:

WHEREAS, numerous complaints have been received from persons within the judiciary, offenders, and other persons relating to the conduct of Earl Osborne as the home incarceration supervisor and the manner in which he administers the program, some of which are potentially subject to investigation; and

WHEREAS, it was reported that the home incarceration supervisor, Earl Osborne, has, on at least one occasion, while speaking with an officer of the Court in regards to an offender undergoing home incarceration, uttered a racial slur while referring to such offender as "just a no-good nigger"; and

WHEREAS, Sheriff Dave Tucker, as a supervisor of the home incarceration supervisor, Earl Osborne, was advised by the office of the Prosecuting Attorney of Kanawha County of said incident; and

WHEREAS, neither Sheriff Dave Tucker or the office of the Prosecuting Attorney of Kanawha County reported that incident concerning the home incarceration supervisor, Earl Osborne, to this Court nor did they officially communicate with the Court about any subsequent investigation of the home confinement program and or it's [sic] supervisor, Earl Osborne, notwithstanding this Court's obvious interest in the appropriate administration of said program; and

WHEREAS, the Court is of the opinion that the only investigation conducted by Sheriff Dave Tucker of Kanawha County relating to said incident was an internal investigation conducted without objectivity and which was biased and unreliable; and

WHEREAS, the numerous complaints relating to the administration of the home incarceration program on the part of the Kanawha County Sheriff's Department and the home incarceration supervisor, Earl Osborne, have eroded the Court's confidence in such program to such a degree that it has, therefore, been effectively taken away from the Court as a means of alternative sentencing;

3

> Now, THEREFORE, based on the foregoing, it is
> ORDERED and ADJUDGED that Earl Osborne be relieved
> forthwith as the supervisor of the home incarceration
> program and that he be removed from the payroll of said
> program as approval of such employment is hereby
> denied.

(Order, attached as Ex. B. to Compl. (emphasis supplied)).  The

order is signed by each of the judges.

On October 12, 2001, pursuant to the order, Sheriff

Dave Tucker and the County Commission of Kanawha County removed

Osborne from his position and terminated his employment.  (Id. at

¶ 6, 7).  The order received coverage in the local news media.

On November 9, 2001, Osborne informed the defendants

that their actions were in violation of the Constitutions and the

laws of the United States of America and West Virginia inasmuch

as his termination was effected without notice and opportunity to

be heard:

> Mr. Osborne has been denied all of his due process and
> equal protection rights under the Federal and State
> Constitutions, his rights under Federal and State
> administrative procedure laws, his governmental
> employment rights, and his rights to administrative due
> process and equal protection of the laws.

(Id. at ¶ 9; Letter attached as Ex. C to Compl.)  Osborne further

demanded that defendants grant him his rights as follows:

> Mr. Osborne demands his rights as stated.  Accordingly,
> Mr. Osborne demands from the Circuit Court, from the
> Sheriff of Kanawha County, and the Kanawha County

4

> Commission a notice and full statement of the charges
> against him.  Mr. Osborne demands an opportunity to
> protest the charges brought against him.  Mr. Osborne
> demands a hearing on the charges, at which he will be
> afforded the opportunity to confront the charges and
> any witnesses against him.  Mr. Osborne demands an
> opportunity to refute the charges, which incidently he
> does.  Mr. Osborne demands the right to have the
> assistance of counsel.  Mr. Osborne demands the right
> to contest the charges, the termination of his
> employment, and any penalty imposed.

(Id.)  Osborne claims that defendants have refused to recognize any of these rights.  (Compl. at ¶ 10.)

On January 27, 2002, Osborne sought unemployment compensation benefits from the West Virginia Bureau of Employment Programs.  (Doc. 131 at 38, Defs.' Mot. Summ. J.).  On February 12, 2002, a deputy concluded Osborne was not disqualified from benefits because the "employer has failed to present evidence that the claimant committed an act of misconduct."  (Id. at 1).  The Kanawha County Commission, listed as the employer in the administrative proceedings, appealed the deputy's decision. (Id.)

On July 2, 2002, a hearing was held before administrative law judge Truman Sayre, Jr.  (Id.)  Osborne was represented by his present counsel.  (Id. at 2).  In addition to Osborne, the following witnesses testified and were subject to cross examination:

5

   William Murray---Court Administrator--------By Employer
   Eric Hudnall-----Assistant Prosecutor-------By Employer
   Daniel Blue------County Manager-------------By Employer
   Shirley Cottrill-Sheriff H.R. Manager-------By Employee
   Ben Browning-----Home Confinement Worker----By Employee
   Robert Evans-----Sheriff Employee-----------By Employee

(Id.).  The hearing resulted in a 341 page transcript.

   Within Judge Sayre's 2 ½ page opinion reversing the deputy's decision, one finding of fact states Osborne told Hudnall that Taylor was "a no good nigger."  (Id. at 39).  Judge Sayre additionally concluded as follows:

> [T]he claimant was discharged because he referred to an offender confined to home incarceration as "a no good nigger".  The claimant's racial slur is inappropriate for a home confinement supervisor. . . .
>
>  There was controversy concerning the facts.  The testimony of . . . Hudnall was considered reliable, considering the circumstances and sequence of the events involving the telephone call with the claimant and the subsequent disclosure resulting in the claimant being relieved from duty.  Mr. Hudnall's testimony is likely what happened.

(Id. at 39-40).  Osborne was disqualified from receiving seven weeks of unemployment compensation benefits.  (Id. at 40).

   Osborne appealed the matter to the Board of Review. (Id. at 41).  On September 10, 2002, the Board of Review heard the appeal.  (Id. at 41).  In a two-page decision entered eight days later, the Board of Review affirmed Judge Sayre's decision. (Id.)

On an unknown date, Osborne appealed the Board of Review's decision to the Circuit Court of Kanawha County.  (Id. at 44).  On June 24, 2003, the Honorable Gary Johnson, sitting by designation from the Circuit Court of Nicholas County, entered an order affirming the Board of Review.  Judge Johnson found, in pertinent part, as follows:

> 2.   The Administrative Law Judge found that the claimant made a racial slur;
>
> 3.   This Court finds that the administrative law judge was present and heard the testimony of the witnesses.  He had the opportunity to observe their demeanor and to assess credibility;
>
> 4.   The Court finds no evidence or testimony in the record to support a finding that the findings made . .  were plainly wrong[.]  Therefore, the findings of fact . . . are hereby upheld.

(Id. at 46).

On October 15, 2002, Osborne initiated this action.  He alleged he "had both a property and liberty interest in continued employment . . . ." (Compl. ¶ 3.)  The complaint further alleges Osborne's entitlement, inter alia, to "due process[,]" an "opportunity . . . to protest . . . [and] . . . for . . . a hearing . . . ."  (Id. ¶ 8).  Specifically, Osborne:

> seeks to refute and defend against any charges against him with the Affidavit of Ben Browning . . . the Affidavit of R.D. Evans . . . with the Affidavit of Earl D. Osborne . . . and with the Report of the internal investigation by the Office of the Sheriff of

7

Kanawha County . . and with the testimony and evidence
of those witnesses in open hearing, all of which
exonerate the Plaintiff from the charges and
allegations made against him.

(Id. ¶ 11).  The referenced affidavits attempt to refute the

allegations concerning the racial slur and are designed to defend

Osborne against the badge of racism.[1]  Osborne alleges that, as a

result of the events surrounding his termination, he was

"publically defamed" and that the affair has "caused irreparable

damage to his reputation as a person and law-enforcement officer

. . . ."  (Id. ¶ 14).

Defendants, in their motion for summary judgment,[2]

_____

[1]Each affidavit is sworn.  Browning contends he and Osborne
were parties to the conversation with the "officer of the Court"
identified in the Order.  Browning observes that he "did not at
anytime hear Mr. Osborne make any derogatory statements or
remarks of any biases."  (Ex. D, Compl.)  Both Browning and
another affiant, R.D. Evans, observe Osborne is evenhanded and
they have never heard him utter a racial slur.  In his own
affidavit, Osborne denies he uttered the racial slur and contends
he tries "to treat African Americans with respect in . . . [his]
personal as well as . . . professional capacity."  (Ex. F,
Compl.).

[2]On November 1, 2007, counsel appeared for the pretrial
conference.  The court noted late-rising legal issues presented
by the parties' in limine briefing, the most substantial of which
was defendants' present contention that issue preclusion arising
from the administrative proceedings serves to limit the factual
questions to be presented to the jury.  Trial was continued to
allow development of the issues through the summary judgment
device.
      On November 26, 2007, Osborne filed a document entitled
                                              (continued...)

contend (1) Osborne is barred from re-litigating the findings of fact resulting from the unemployment compensation proceedings, and (2) they are entitled to judgment as a matter of law on Osborne's property interest claim.

II.

A.    The Governing Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[2](...continued)
"Plaintiff's Objections and Exceptions."  The document reflects Osborne's disagreement with the court (1) allowing defendants to file a summary judgment beyond the deadline established in the scheduling order, (2) extending the trial date, (3) refusing schedule modifications requested by him, and (4) various other pretrial rulings.  The court understands the filing as an unnecessary attempt to preserve issues for appeal rather than seeking action by the court pursuant to the requirements of Federal Rule of Civil Procedure 7(b).  In the event Osborne seeks action by the court, he should move as required by Rule 7(b).  To the extent Osborne challenges consideration of the summary judgment motion based upon its putative untimeliness, the court is vested with discretion to allow the considered development of legal issues prior to trial.

Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>Id.</u> at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate

10

factual conclusions to be drawn are in dispute.  Overstreet v.
Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

        A court must neither resolve disputed facts nor weigh
the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th
Cir. 1995), nor make determinations of credibility.  Sosebee v.
Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party
opposing the motion is entitled to have his or her version of the
facts accepted as true and, moreover, to have all internal
conflicts resolved in his or her favor.  Charbonnages de France
v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are
"drawn from the underlying facts    . . . must be viewed in the
light most favorable to the party opposing the motion."  United
States v. Diebold, Inc., 369 U.S. 654, 655 (1962).


B.   Governing Law and Analysis


        The important justifications for claim and issue
preclusion are well understood.  See Dionne v. Mayor and City
Council of Baltimore, 40 F.3d 677, 683 (4th Cir. 1994) (noting
cost savings, the elimination of vexing, multiple lawsuits,
conservation of judicial resources, and avoidance of inconsistent
decisions).  These salutary objectives sometimes yield though in
the absence of a prior judgment satisfying the requirements

attached to either the preclusion doctrines themselves or basic
due process.

In <u>Kremer v. Chemical Construction Corp.</u>, 456 U.S. 461
(1982), the Supreme Court addressed the preclusive effect in
federal court of prior state judicial review of state
administrative proceedings.  Specifically, <u>Kremer</u> addressed
"whether a federal court in a Title VII case should give
preclusive effect to a decision of a state court upholding a
state administrative agency's rejection of an employment
discrimination claim as meritless when the state court's decision
would be res judicata in the State's own courts."  <u>Id.</u> at 463.
The procedural similarities between <u>Kremer</u> and this action are
noteworthy:

> [T]he [New York State Division of Human Rights (NYHRD)]
> . . . concluded that there was no probable cause to
> believe that Chemico had engaged in the discriminatory
> practices complained of [by former Chemico employee
> Kremer]. . . . The NYHRD's determination was upheld by
> its Appeal Board as "not arbitrary, capricious or an
> abuse of discretion." Kremer . . . filed . . . a
> petition with the Appellate Division of the New York
> Supreme Court to set aside the adverse administrative
> determination. On February 27, 1978, five justices of
> the Appellate Division unanimously affirmed the Appeal
> Board's order. Kremer could have sought, but did not
> seek, review by the New York Court of Appeals.

<u>Id.</u> at 464.  Kremer thereafter instituted a Title VII action in
federal court claiming, as he had during the NYHRD proceedings,

that he was the victim of religious and national origin

discrimination.  The Supreme Court initially observed as follows:

> [28 U.S.C.] Section 1738 requires federal courts to
> give the same preclusive effect to state court
> judgments that those judgments would be given in the
> courts of the State from which the judgments emerged.
> Here the Appellate Division of the New York Supreme
> Court has issued a judgment affirming the decision of
> the NYHRD Appeals Board that the discharge and failure
> to rehire Kremer were not the product of the
> discrimination that he had alleged. There is no
> question that this judicial determination precludes
> Kremer from bringing "any other action, civil or
> criminal, based upon the same grievance" in the New
> York courts. N.Y.Exec.Law § 300 (McKinney 1972). By its
> terms, therefore, § 1738 would appear to preclude
> Kremer from relitigating the same question in federal
> court.

Id. at 466-67 & n.6.

     The general principles outlined in Kremer have been

relied upon time and again in both prior and subsequent Supreme

Court decisions.  See, e.g., Exxon Mobil Corp. v. Saudi Basic

Indus. Corp., 544 U.S. 280, 293 (2005) ("The Full Faith and

Credit Act, 28 U.S.C. § 1738 . . . requires the federal court to

'give the same preclusive effect to a state-court judgment as

another court of that State would give.'"); Baker by Thomas v.

General Motors Corp., 522 U.S. 222, 246, (1998); Matsushita Elec.

Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373 (1996); University

of Tennessee v. Elliott, 478 U.S. 788, 798-99 (1986) ("[W]hen a

state agency 'acting in a judicial capacity . . . resolves

disputed issues of fact properly before it which the parties have

13

had an adequate opportunity to litigate,' federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.") (quoted authority omitted); <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985); <u>Migra v. Warren City School District Board of Education</u>, 465 U.S. 75, 83 (1984) ("<u>Allen[ v. McCurry</u>, 449 U.S. 90 (1980)] . . . made clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered.").

Our court of appeals has likewise applied the same principles on many occasions, examining relevant state preclusion law to determine if a prior proceeding is entitled to deference in a subsequent federal action.  <u>See</u>, <u>e.g.</u>, <u>In re Heckert</u>, 272 F.3d 253, 257 (4th Cir. 2001); <u>In re Genesys Data Technologies, Inc.</u>, 204 F.3d 124, 128 (4th Cir. 2000); <u>Rao v. County of Fairfax,</u> 108 F.3d 42, 44 (4th Cir. 1997); <u>Clark v. Alexander</u>, 85 F.3d 146, 151 (4th Cir. 1996); <u>In re McNallen</u>, 62 F.3d 619, 624 (4th Cir. 1995); <u>Dionne v. Mayor and City Council of Baltimore</u>, 40 F.3d 677, 682 (4th Cir. 1994) ("The Full Faith and Credit Statute, 28 U.S.C. § 1738, obligates federal courts to apply state preclusion rules to determine whether a prior state court judgment has either issue or claim preclusive effect in a § 1983

14

action."); Layne v. Campbell County Dep't of Social Servs., 939
F.2d 217, 219 (4th Cir. 1991).  Indeed, in the course of applying
state preclusion rules, the Fourth Circuit has concluded that,
"[u]nder controlling Maryland [preclusion] law[, a] . . .
Maryland unemployment compensation decision was not entitled to
receive collateral estoppel effect in a Title VII action alleging
retaliatory discharge."  Ross v. Communications Satellite Corp.
759 F.2d 355, 357 (4th Cir. 1985), overruled on other grounds,
490 U.S. 228 (1989).

     As stated in Genesys, the application of preclusion
principles is subject to a two-part inquiry:

> First, a federal court must look to state law to
> determine the preclusive effect of the state court
> judgment.  If state law would not bar relitigation of
> an issue or claim decided in the earlier proceeding,
> then the inquiry ends -- a federal court will not give
> the state court judgment preclusive effect either. If
> state law would afford the judgment preclusive effect,
> however, then a federal court must engage in a second
> step -- it must determine if Congress created an
> exception to § 1738.  Only if "some exception to § 1738
> applie[s]" can a federal court refuse to give a
> judgment the preclusive effect to which it is entitled
> under state law. An exception "will not be recognized
> unless a later statute contains an express or implied
> partial repeal" of § 1738.

Genesys, 204 F.3d at 128 (citations omitted); see also Jaffe v.
Accredited Surety and Casualty Co., Inc., 294 F.3d 584, 590 (4th
Cir. 2002).

The state rule applicable in this instance is derived from Page v. Columbia Natural Resources, Inc., 198 W. Va. 378, 480 S.E.2d 817 (1996). In Page, a legal secretary accused her supervisor and corporate employer of (1) unlawful retaliation under the West Virginia Human Rights Act, and (2) wrongful discharge in violation of Harless v. First Nat. Bank in Fairmont, 162 W. Va. 116, 246 S.E.2d 270 (1978). Prior to instituting the civil action, however, Page applied for unemployment compensation benefits. While she initially was awarded benefits, the Circuit Court of Kanawha County reversed the administrative determination. The circuit court concluded Page was terminated as a result of gross misconduct and not entitled to benefits.

During the administrative proceedings, Page was represented by counsel. While she had the apparent right to do so, she chose not to present evidence to the presiding ALJ. The supreme court of appeals first observed the governing standard:

In syllabus point three of Mellon-Stuart Co. v. Hall, we stated:

An assessment of three factors is ordinarily made in determining whether res judicata and collateral estoppel may be applied to a hearing body: (1) whether the body acts in a judicial capacity; (2) whether the parties were afforded a full and fair opportunity to litigate the matters in dispute; and (3) whether applying the doctrines is consistent with the express or implied policy in the legislation which created the body.

178 W. Va. 291, 359 S.E.2d 124 (1987).

16

Page, 198 W. Va. at 392, 480 S.E.2d at 831.  After considering

the decisions in Slack v. Kanawha County Housing and

Redevelopment Authority, 188 W. Va. 144, 423 S.E.2d 547 (1992),

Taylor v. City National Bank, 642 F. Supp. 989, 997 (S.D. W. Va.

1986), and Vest v. Board of Education, 193 W. Va. 222, 455 S.E.2d

781 (1995), each favoring Page's position, the supreme court of

appeals observed additionally as follows:

> In considering appellants' argument, we note further
> that unemployment proceedings are presented and decided
> without the delay and formality involved in court
> proceedings. See, e.g., 84 C.S.R. § 2.3(a). Moreover,
> formal rules of evidence do not apply. There is no
> discovery and little time to investigate, prepare, and
> present the complicated evidence necessary to prove the
> issues of motive and intent that are required in a
> retaliatory discharge claim. We believe that, in accord
> with the federal decision in Taylor and our holdings in
> Slack and Vest, it is appropriate to once again reject
> a collateral bar here to reinforce the Legislature's
> purposes in designing the employment security claim
> process as a speedy and relatively informal process.
> Moreover, in view of the relaxation of procedural rules
> and evidentiary requirements in the administrative
> proceedings -- along with the discovery limitations and
> prohibitions and the frequent attention to specific
> policy goals in such proceedings -- we are of the
> opinion that only rarely, if at all, will
> administrative proceedings provide the same full and
> fair opportunity to litigate matters as will a judicial
> proceeding involving the complexity, intensity, and
> specific inquiries common to a wrongful discharge case.

Page, 198 W. Va. at 393, 480 S.E.2d at 832 (emphasis supplied).

The analysis found in Page was recently cited with approval in

significant part.  Brooks v. Galen of West Virginia, Inc., 220

W.Va. 699, 705, n.4  649 S.E.2d 272, 278 n.4 (2007) (reflecting

citation and parenthetical as follows: "<u>Page v. Columbia Nat.
Resources, Inc.</u>, 198 W. Va. 378, 393, 480 S.E.2d 817, 832 (1996)
('[O]nly rarely, if at all, will administrative proceedings
provide the same full and fair opportunity to litigate matters as
will a judicial proceeding involving the complexity, intensity,
and specific inquiries common to a wrongful discharge case.')").

        Leaving aside the apprehension expressed in <u>Page</u>
concerning adequate discovery and due process, it is evident the
West Virginia court was also concerned that the specter of issue
preclusion might cause unemployment compensation proceedings to
evolve into heavily contested, time consuming, and expensive
affairs.  That type of development would significantly undermine
a carefully crafted legislative scheme designed to (1) provide a
"reasonable and effective" hand up to displaced workers, and (2)
reduce "the hazards of unemployment."  W. Va. Code § 21A-1-1.

        The supreme court of appeals in <u>Page</u> chose not to
accord preclusive effect to unemployment compensation
proceedings.  The West Virginia court chose instead to maintain a
categorical approach against preclusion, awaiting that "rare[]"
future action that might warrant an exception.  In view of the
weighty policy considerations at issue, the court adopts the same
approach.  <u>Cf.</u> <u>Tritle v. Crown Airways, Inc.</u>, 928 F.2d 81, 84
(4th Cir. 1990) (internal quotation marks omitted) (noting a
court, sitting in diversity, should not "surmise or suggest . . .
expansion" of state law.").

Defendants nevertheless offer several arguments supporting preclusion.  First, they observe that other jurisdictions have accorded preclusive effect to unemployment compensation and related proceedings.  The cited authorities, however, relying on extraterritorial law, are largely unhelpful here inasmuch as existing West Virginia jurisprudence suggests a contrary result.

Second, defendants suggest this action qualifies as the "rare[]" case suitable for issue preclusion contemplated by Page based upon Osborne being accorded (1) the right to examine and cross examine witnesses, (2) disposition by a neutral and detached decision maker at three levels of review, and (3) the assistance of counsel.  The argument ignores, however, the equally weighty policy determination by the West Virginia court that a rule of preclusion might interfere with "the Legislature's purposes in designing the employment security claim process as a speedy and relatively informal process . . . ."  Page, 198 W. Va. at 393, 480 S.E.2d at 832.[3]

---

[3]Defendants also contend in their opening brief that the language in Page should not be relied upon inasmuch as it is not found in the syllabus preceding the opinion.  The argument is not without force. See, e.g., syl. pt. 6, Estate of Tawney v. Columbia Natural Resources, L.L.C., 219 W. Va. 266, 268, 633 S.E.2d 22, 24 (2006) ("'[W]hen new points of law are announced . . . those points will be articulated through syllabus points as required by our state constitution.'")(quoting  syl. pt. 2, in (continued...)

Next, defendants contend <u>McCulty v. Rockefeller</u>, 570 F. Supp. 1455 (S.D. W. Va. 1983), supports issue preclusion.  The decision in <u>McCulty</u>, however, involved an "administrative determination . . . of a federal, not a state, agency."  <u>Id.</u> at 1458 n.3.  There, the administrative decision of the United States Secretary of Labor, made after a "full hearing" by an administrative law judge, was affirmed by the Fourth Circuit Court of Appeals.  <u>Id.</u> (citing <u>Moellendick v. West Virginia Governor's Office of Economic & Community Devel.</u>, 717 F.2d 922, 924 (4th Cir. 1983)).  Consequently, <u>McCulty</u> involved neither state preclusion rules or the full faith and credit clause of 28 U.S.C. § 1738.  Additionally, to the extent <u>McCulty</u> is offered by defendants as persuasive authority concerning how a West Virginia preclusion rule should properly be fashioned, the suggestion must yield to the authoritative opinion by the supreme court of appeals in <u>Page</u>.

---

<sup>3</sup>(...continued)
part, <u>Walker v. Doe</u>, 210 W. Va. 490, 558 S.E.2d 290 (2001)). Nevertheless, regardless of where it appears in the opinion, the court cannot simply overlook the language in <u>Page</u>, especially when the verbiage was essential to the supreme court of appeals' holding.  This is especially the case where the language asserted to be dicta was recently quoted with approval, in part, in the later decision in <u>Brooks</u>.  Further, in their reply brief, defendants concede <u>Page</u> "provide[s] essential guidance with respect to application of preclusion rules in relation to a prior administrative decision . . . ."  (Defs.' Reply at 6).  For these reasons, the court declines to accept defendants' argument.

Finally, to the extent defendants claim the unemployment compensation proceedings functionally satisfied the name-clearing-hearing requirement, it is noted that (1) the hearing came some nine months after Osborne's termination[4], (2) Osborne's request for a name-clearing hearing within a month of his termination was either ignored or denied, and (3) the unemployment compensation hearing came about only as a result of the employer's challenge to Osborne receiving benefits. These unusual circumstances counsel against the unemployment compensation proceedings serving as a name-clearing surrogate.

Based upon the foregoing analysis, defendants are not entitled to judgment as a matter of law based upon the preclusive effect or outcome of the unemployment compensation proceedings.

---

[4]Some authorities observe the significance of delay in this setting. Cf., e.g., Sciolino v. City of Newport News, 480 F.3d 642, 653 (4th Cir. 2007) ("Fundamental to due process is an opportunity to be heard -- 'an opportunity which must be granted at a meaningful time.' An opportunity to clear your name after it has been ruined by dissemination of false, stigmatizing charges is not 'meaningful.'"); Patterson v. City of Utica, 370 F.3d 322, 336 (2nd Cir. 2004) ("A name-clearing hearing must conform to the requirements of the Due Process Clause. The fundamental requirement of the Due Process Clause is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.'"); Lyons v. Barrett, 851 F.2d 406, 411 (D.C. Cir. 1988) ("By its very nature, a name-clearing hearing is something that loses value the longer it is delayed.").

C.    Property Interest Claim


          Our court of appeals has observed, in accordance with settled Supreme Court precedent, that "[i]n order to have a protected property interest in his employment, a person must possess a legitimate claim of entitlement to it -- created, for example, by contract or state law."  Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 308 n.14 (4th Cir. 2006); see Jackson v. Long, 102 F.3d 722, 728 (4th Cir. 1996).


          In Jackson, the court of appeals concluded that the plaintiffs lacked a property interest in their continued employment, observing as follows:

> Under North Carolina law, employment is generally presumed to be "at-will" in the absence of a contract establishing a definite employment duration or a statute or ordinance restricting an employee's discharge. See Pittman v. Wilson County, 839 F.2d 225, 227 (4th Cir. 1988). Rather than restricting the discharge of sheriff's employees, including jailers, North Carolina law explicitly grants sheriffs exclusive power over employment decisions. See N.C. Gen. Stat. §§ 153A-103 ("Each sheriff ... elected by the people has the exclusive right to hire, discharge, and supervise the employees in his office").

Jackson, 102 F.3d at 728.


          The nature of the at-will employment relationship in West Virginia is akin to the law of North Carolina as discussed in Jackson.  Like North Carolina, employment in West Virginia is generally presumed to be at will:

22

> "This Court has traditionally recognized that an
> employment which is of an indefinite duration is
> rebuttably presumed to be a hiring at will, which is
> terminable at any time at the pleasure of either the
> employer or the employee."
>
> [B]ecause of the at-will presumption, "any promises
> alleged to alter the presumptive relationship must be
> very definite to be enforceable."  The party asserting
> that an employment was other than at-will bears the
> burden of rebutting the at-will presumption.  The
> burden a plaintiff undertakes in this regard is heavy .
> . . .

<u>Younker v. Eastern Associated Coal Corp.</u>, 214 W. Va. 696,

699-700, 591 S.E.2d 254, 257-58 (2003) (citations omitted).

        Also similar to <u>Jackson</u>, a review of the specific

statutes governing Osborne's employment reinforces the conclusion

that he served at the will and pleasure of his employer.  As

earlier noted, West Virginia Code section 62-22B-7a provides as

follows:

> <u>The county commission may employ</u> one or more persons
> with the approval of the circuit court and who shall be
> subject to the supervision of the sheriff as a home
> incarceration supervisor or may designate the county
> sheriff to supervise offenders ordered to undergo home
> incarceration and to administer the county's home
> incarceration program.

W. Va. Code § 62-11B-7a (emphasis supplied).  West Virginia Code

section 7-1-3m additionally permits county commissions "to

discharge at their will and pleasure, any . . . personnel"

similarly situated to Osborne.  <u>See</u> W. Va. Code § 7-1-3m

(emphasis supplied).

Although not discussed by the parties, to the extent
any doubt remains concerning Osborne's status, the decision in
Jenkins v. Weatherholtz, 909 F.2d 105 (4th Cir. 1990), reinforces
the conclusion that he possessed no property interest in his
continued employment as Home Incarceration Supervisor: "A local
government employee serving 'at the will and pleasure' of the
government employer has no legitimate expectancy of continued
employment and thus has no protectible property interest."  Id.
at 107.[5]

Based upon the foregoing analysis, defendants are
entitled to judgment as a matter of law on Osborne's property
interest claim.

_____

[5]Osborne relies heavily upon Spriggs v. Diamond Auto Glass,
165 F.3d 1015 (4th Cir. 1999).  In Spriggs, plaintiff alleged his
claim pursuant to 42 U.S.C. § 1981 was dismissed in error because
his at-will employment relationship with Diamond was contractual
and thus protected by § 1981.  The question of whether a
relationship has sufficient contractual indicia for purposes of
section 1981, however, is entirely distinct from the unrelated
issue of whether an at-will employment relationship gives rise to
a protectible property interest for Fourteenth Amendment
purposes.  As noted, Jenkins rather conclusively forecloses
Osborne's contention that his at-will employment relationship
equates to a property interest in continued employment for due
process purposes.  Were the rule otherwise, every public employee
would enjoy a property interest in his or her continued
employment.  The law, as stated in Jenkins, is otherwise, and
Spriggs is inapposite.

III.


        The court ORDERS that defendants' motion for summary
judgment be, and it hereby is, granted in part and denied in part
as set forth above.

        The Clerk is directed to forward copies of this written
opinion and order to all counsel of record.

                        DATED: March 24, 2008


                        _____
                        John T. Copenhaver, Jr.
                        United States District Judge

25